UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| WILLIAM J. M. [1], <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | CASE NO. 3:20-CV-847-MGG |

**OPINION AND ORDER**

Plaintiff William J. M ("Mr. M"), proceeding *pro se*, seeks judicial review of the Social Security Commissioner's decision denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act").

This Court may enter a ruling in this matter based on the parties' consent pursuant to 28 U.S.C. § 636(c)(1) and 42 U.S.C. § 405(g). For the reasons discussed below, the Court **AFFIRMS** the Commissioner's decision.

**I.   OVERVIEW OF THE CASE**

Mr. M's complaint for judicial review comes before the Court after his third hearing before an ALJ on his application for DIB.

Mr. M applied for DIB on September 16, 2013, alleging a disability onset date of March 26, 2013. Mr. M's application was denied initially on November 26, 2013, and it

---

[1] To protect privacy interests, and consistent with the recommendation of the Judicial Conference, the Court refers to the plaintiff by first name, middle initial, and last initial only.

was denied again upon reconsideration on January 31, 2014. Following a hearing held on September 2, 2015, an Administrative Law Judge ("ALJ") issued a decision on November 6, 2015, which affirmed the Commissioner's denial of benefits. Mr. M asked the Appeals Council to review the ALJ's decision, and the Appeals Council issued an order remanding the case on December 16, 2016. An ALJ held a remand hearing on June 28, 2017, with Mr. M appearing *pro se* and waiving his right to an attorney. The ALJ issued a decision on December 15, 2017, finding that Mr. M was not disabled from March 26, 2013, through the date last insured, June 30, 2015. Upon Mr. M's request for review, the Appeals Council again issued an order remanding his case on December 26, 2018.[2]

Mr. M appeared *pro se* for another remand hearing on August 27, 2019—his third hearing before an ALJ—and again waived his right to be represented by an attorney. The ALJ issued a decision affirming the Commissioner's denial of benefits on October 2, 2019. The ALJ's decision after this third hearing became the final decision of the Commissioner when the Appeals Council declined review on August 11, 2020. *See Fast v. Barnhart*, 397 F.3d 468, 470 (7th Cir. 2005).

Mr. M timely sought judicial review of the Commissioner's decision on October 8, 2020. Mr. M filed his opening brief on July 29, 2021, and the Commissioner filed her Memorandum in Support of Decision on September 9, 2021. This matter became ripe on September 23, 2021, with no reply filed by Mr. M. *See* N.D. Ind. L.R. 7-3(d).

---

[2] Mr. M filed a subsequent claim on February 2, 2018. Accordingly, on February 13, 2019, the Appeals Council issued another order acknowledging that the remand of his current claim rendered this subsequent claim redundant.

2

## II.   APPLICABLE STANDARDS

### A.   Disability Standard

To qualify for DIB, a claimant must be "disabled" under Sections 216(i), 223(d), and 1615(a)(3)(A) of the Act. A person is disabled under the Act if "he or she has an inability to engage in any substantial gainful activity ["SGA"] by reason of a medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Substantial gainful activity is defined as work activity that involves significant physical or mental activities done for pay or profit. 20 C.F.R. § 404.1572.

The Commissioner's five-step sequential inquiry for evaluating claims for disability benefits under the Act includes determinations as to: (1) whether the claimant is engaged in SGA; (2) whether the claimant's impairments are severe; (3) whether any of the claimant's impairments, alone or in combination, meet or equal one of the Listings in Appendix 1 to Subpart P of 20 C.F.R. Part 404 (or, if the impairments do not, a determination of the claimant's residual functional capacity ("RFC")); (4) whether the claimant can perform his past relevant work based upon his RFC; and (5) whether the claimant is capable of making an adjustment to other work. 20 C.F.R. § 404.1520; *see also Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012). The claimant bears the burden of proof at every step except Step Five. *Clifford v. Apfel,* 227 F.3d 863, 868 (7th Cir. 2000).

### B.   Standard of Review

This Court has authority to review a disability decision by the Commissioner pursuant to 42 U.S.C. § 405(g). However, this Court's role in reviewing Social Security

3

cases is limited. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). The question on judicial review is not whether the claimant is disabled; rather, the Court considers whether the ALJ used "the correct legal standards and [whether] the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2007).

The Court must uphold the ALJ's decision so long as it is supported by substantial evidence. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014) (citing *Similia v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009)). Substantial evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Substantial evidence has also been understood as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017). The Supreme Court has also noted that "substantial evidence" is a term of art in administrative law, and that "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high" in Social Security appeals. *Biesek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The Court reviews the entire administrative record to determine whether substantial evidence exists, but it may not reconsider facts, reweigh the evidence, resolve conflicts of evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004).

An ALJ's decision cannot stand if it lacks evidentiary support or inadequately discusses the issues. *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). At a minimum, an ALJ must articulate her analysis of the record to allow the reviewing court to trace

the path of her reasoning and to be assured the ALJ has considered the important evidence in the record. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). The ALJ is not required to address every piece of evidence in the record so long as she provides a glimpse into the reasoning behind her analysis to build the requisite "logical bridge" from the evidence to her conclusions. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008).

### III. ANALYSIS

#### A. The ALJ's Decision

Mr. M's third hearing before an ALJ on his application for DIB took place on August 27, 2019. At this hearing, Mr. M appeared *pro se*. A medical expert, Dr. Fischer, and a vocational expert (VE) also appeared and testified at Mr. M's hearing. [DE 21 at 18]. On October 2, 2019, the ALJ issued her written decision finding that Mr. M was not disabled, conducting the requisite five-step analysis for evaluating claims for disability benefits. 20 C.F.R. § 416.920(a)(4).

At Step One, an ALJ's inquiry focuses on whether a claimant is engaging in substantial gainful activity. Here, the ALJ determined that Mr. M had not engaged in substantial gainful activity from his alleged onset date of March 26, 2013, through his date last insured of June 30, 2015.

At Step Two, an ALJ's inquiry focuses on whether a claimant's impairments are severe. For an impairment to be considered severe, an impairment or combination of impairments must significantly limit the claimant's ability to perform basic work-related activities. 20 CFR § 404.1521 Here, the ALJ found that Mr. M had the following medically determinable impairments that were severe as defined by the Social Security

Act: (1) mild lumbar degenerative disc disease; (2) arthritis of the bilateral knees; (3) slight hand tremors; (4) mild obesity; (5) history of seizure disorder; and (6) history of migraines/headaches. [DE 21 at 21]. Conversely, an impairment is considered non-severe when the medical evidence establishes only a slight abnormality or combination of slight abnormalities that would have no more than a minimal effect on the claimant's ability to perform basic work functions. *See, e.g.*, S.S.R. 85-28, 1985 WL 56856 (Jan. 1, 1985). Here, the ALJ found that Mr. M had the following non-severe medically determinable impairments: (1) cervical spine disorder status post multiple surgeries; (2) affective disorder; and (3) reduced memory. [DE 21 at 22].

At Step Three, the ALJ found that none of Mr. M's impairments, nor any combination of his impairments, met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. In making this finding, the ALJ considered listings 1.02, 1.03, 1.04, 11.02, 11.03, 12.02, 12.04, and Social Security Ruling 19-2p. [DE 21 at 25]. Accordingly, before moving on to Step Four, the ALJ proceeded to determine whether Mr. M can perform his past relevant work based upon his residual functional capacity ("RFC").

A claimant's RFC includes limitations for all medically determinable impairments, including non-severe impairments. 20 C.F.R. § 404.1545(a)(2). Accordingly, the RFC is the most that the individual can do despite his limitations. 20 C.F.R. § 404.1545(a). To determine a claimant's RFC, the ALJ must consider the claimant's symptoms, their intensity, persistence, and limiting effects, and the consistency of these symptoms with the objective medical evidence and other evidence

in the record. 20 C.F.R. § 404.1545(a)(1). Physical exertion requirements are classified as either sedentary, light, medium, heavy, or very heavy. 20 C.F.R. § 404.1567. Here, the ALJ found that Mr. M had the RFC to perform sedentary work, but with additional postural, manipulative, and environmental limitations:

> The claimant had the residual functional capacity to perform the full range of sedentary work as defined in 20 CFR 404.1567(a), except the claimant could never climb ladders, ropes or scaffolds; never kneel, crouch or crawl; occasionally balance and stoop; occasionally climb ramps and stairs; [could only] frequently handle, finger, and feel bilaterally; frequently reach in all other directions bilaterally; occasionally overhead reach bilaterally; no driving as a condition of employment and no exposure to unprotected heights or moving machinery.

After making this RFC determination, at Step Four, the ALJ determined that Mr. M could not perform any of his past relevant work. Accordingly, the ALJ moved on to last step in the five-step sequential analysis.

At Step Five, while the burden of proof shifts to the Commissioner, the Commissioner need only show that the claimant can perform some type of substantial gainful work existing in the national economy in substantial numbers. 42 U.S.C. § 423(d)(2)(A). ALJs typically enlist a VE to testify regarding which occupations, if any, a claimant can perform. *See* S.S.R. 83-12. VEs use information from the Dictionary of Occupational Titles ("DOT") to inform their assessments of a claimant's ability to perform certain types of work. S.S.R. 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000). Here, the VE, using the DOT, identified three separate jobs that Mr. M could still perform—document specialist, touch up screener, and charge account clerk—that respectively have 200,000 jobs nationally, 50,000 jobs nationally, and 40,000 jobs nationally.

Finding that Mr. M could make an adjustment to other work that existed in substantial numbers, the ALJ determined that Mr. M was not under a disability, as defined in the Act, from his alleged onset date of March 26, 2013, through his date last insured of June 30, 2015. [DE 21 at 34].

B.    **Issues for Review**

Mr. M devotes most of his *pro se* complaint and opening brief on judicial review to an overview of his work history, symptoms, and treatment. Most of the information discussed by Mr. M occurred after his date last insured (June 30, 2015). [DE 1 at 2; DE 25]. Mr. M's complaint provides an overview of the following information from the relevant period: an injury he suffered after a seizure in 2013, pain management treatment he sought in 2014, and a spinal cord stimulator he had implanted in 2015. Regarding the spinal cord stimulator, Mr. M further states that it allowed him only a "max weight of 15 pounds." [DE 1 at 2].

However, the remainder of his complaint discusses symptoms and procedures that occurred after his date last insured. [DE 1 at 3]. Specifically, Mr. M's complaint describes that he had this spinal cord stimulator removed in 2016, that a 2016 MRI showed that he had a pinched nerve in his neck, and that he underwent a decompression fusion procedure in 2016. Mr. M further states that these treatments all connect back to issues stemming from his seizure in 2013. Finally, Mr. M also explains that he underwent revision surgery in 2018, had hardware failure in 2019, and that he suffered more seizures in 2020. [DE 1 at 3]. In his opening brief, Mr. M provides a similar narrative of his symptoms and treatment history.

Mr. M only puts forth two statements that go beyond a narrative of his symptoms and treatment history. First, in his complaint, he states that he does "not believe the administrative law judge looked at all the medical records. And then said that I am not disabled." [DE 1 at 2]. Moreover, he concludes his opening brief by stating that he has "limited neck mobility and a 7.5 lb max weight limit" due to the injury he suffered in 2013 after his seizure as well as the multiple surgeries he underwent in 2016-2019 to address that injury. [DE 1 at 2; DE 25].

Filings by *pro se* plaintiffs are generally held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, a *pro se* litigant must still "present a cogent legal argument with citations to authority and relevant parts of the record." *Jamar E. v. Saul*, No. 1:19-CV-194-JVB, 2020 WL 4282756, at *2 (N.D. Ind. July 27, 2020) (citing *Greenwell v. Saul*, 811 F. App'x 368, 370 (7th Cir. 2020). Accordingly, to obtain relief, a *pro se* litigant must show the Court "that the ALJ's decision was not supported by substantial evidence or that an incorrect legal standard was used." *Jennifer N. v. Saul*, No. 3:18-CV-811-JVB, 2020 WL 4333758, at *3 (N.D. Ind. July 28, 2020). Indeed, perfunctory and undeveloped arguments—even when presented by a *pro se* litigant—are considered waived. *See M.G. Skinner & Assocs. Ins. Agency v. Norman-Spencer Agency*, 845 F.3d 313, 321 (7th Cir. 2017); *see also Border v. Crystal Lake*, 75 F.3d 270, 274 (7th Cir. 1996).

Here, Mr. M does not identify any specific error in the ALJ's analysis, nor does he state that an incorrect legal standard was used. Accordingly, his complaint and supporting brief fail to meet the required standard for *pro se* pleadings. *See*

9

Greenwell, 811 F. App'x at 370. As such, Mr. M's generalized argument that the ALJ did not look at all his medical records is perfunctory and undeveloped. This generalized argument is considered waived and provides no basis to reverse the ALJ's decision. *See Jamar E.*, 2020 WL 4282756, at *2.

Nevertheless, liberally construing Mr. M's complaint, the Court infers that Mr. M also argues that the ALJ's decision regarding his neck mobility limitations and his maximum lift/carry limitations is not supported by substantial evidence. However, even with the benefit of the Court's liberal interpretation of Mr. M's complaint, these arguments still fail.

### 1. Neck Mobility Limitations

Under the Court's liberal construction of his complaint, Mr. M first argues that the ALJ's opinion regarding his neck mobility limitations did not consider all his medical records and therefore, is not supported by substantial evidence. The ALJ's opinion discusses Mr. M's neck limitations during the relevant period at Steps Two and Three of the five-step analysis.

First, at Step Two, the ALJ found that the medical evidence regarding Mr. M's cervical spine disorder status post multiple surgeries established only a slight abnormality or combination of slight abnormalities that would have no more than a minimal effect on the ability to perform basic work functions. Accordingly, the ALJ found that Mr. M's cervical spine disorder was a non-severe medically determinable impairment prior to his date last insured. [DE 21 at 21-22]. The ALJ's opinion refers to testimony from Dr. Fischer and medical records to reach this determination.

Specifically, the ALJ discussed Dr. Fischer's testimony that Mr. M did not have any significant limitations in his range of motion of the cervical or lumbar spine. [DE 21 at 21]. The ALJ also discussed the medical records referenced by Dr. Fisher in his testimony, which showed that Mr. M had pain and moderate tenderness in his right lumbar and cervical spine. However, the ALJ found that these records also showed that Mr. M's muscle strength was intact and did not document any significant limited ranges of motion. [DE 21 at 21, citing to DE 21 at 878]. The ALJ also recognized that while Mr. M's hand tremors could be associated with issues stemming at the cervical spine, the records showed that his hand tremors were considered only mild or slight. Finally, the ALJ discussed Mr. M's MRI from 2016, which showed moderate to severe stenosis in Mr. M's cervical spine. However, this MRI was taken after Mr. M's date last insured and the ALJ found that records from the relevant period showed no complaints or prominent limitations. [DE 21 at 22, citing to DE 21 at 1017].

The ALJ also discussed evidence of Mr. M's neck limitations as part of Mr. M's RFC determination at Step Three. Here, the ALJ discussed more developments regarding Mr. M's neck after relevant period, including his 2016 MRI and cervical fusion, as well as his hardware failure and revision surgery in 2019, consistent with the information provided by Mr. M on judicial review. [DE 21 at 29]. Although Mr. M states that his neck limitations stem from his 2013 injury, the ALJ discussed this, finding that no evidence shows that these treatments connect back prior to Mr. M's date last insured to warrant additional limitations in the RFC. [DE 21 at 29].

11

The ALJ also considered opinion evidence from three experts as part of Mr. M's RFC determination. Two experts opined that Mr. M was capable of light work with certain postural and manipulative limitations. [DE 21 at 31]. The ALJ gave these opinions little or some weight, respectively. Relevant to Mr. M's neck, one expert did recommend additional manipulative limitations, stating that Mr. M could only occasionally reach with his left hand and only occasionally push/pull with his right hand and never with his left hand. However, in declining to add these occasional manipulative limitations to Mr. M's RFC, the ALJ explained that she only gave this opinion some weight, noting that these occasional manipulative limitations were not supported during the relevant period. Specifically, the ALJ noted that Mr. M did not have significant issues with his neck until after the relevant period. [DE 21 at 31].

The ALJ ultimately gave great weight to Dr. Fischer's opinion, which recommended the same manipulative limitations that the ALJ included in the RFC. The ALJ explained that she gave great weight to Dr. Fisher's opinion because he reviewed all evidence submitted through the most recent hearing but only focused his testimony on the relevant period. The ALJ also explained that Dr. Fischer considered whether newer evidence connected back to the relevant period to warrant additional RFC limitations. [DE 21 at 32].

Therefore, the ALJ discussed Mr. M's neck at Step Two and explained her reasoning as to her determination that MR. M's cervical spine disorder post multiple surgeries was non-severe. Moreover, the ALJ discussed Mr. M's neck as part of her determination of Mr. M's RFC and explained why additional manipulative limitations

in the RFC were not given more weight. The ALJ need not discuss every piece of evidence presented; rather, she must provide an accurate and logical bridge between the evidence and her conclusion. *Craft*, 539 F.3d at 673. Here, the ALJ's discussion of the objective findings, clinical findings, and opinion evidence provides a glimpse into her reasoning that builds the necessary "logical bridge" from the evidence in the record to her determination of Mr. M's RFC as it pertains to his neck mobility prior to the date last insured. *See Denton v. Astrue*, 596 F.3d 419, 425-26 (7th Cir. 2010); *see also O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010). This Court cannot reconsider facts, reweigh the evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *Young*, 362 F.3d at 1001. Even though the Court has liberally construed Mr. M's complaint, he still fails to identify any evidence or error in the ALJ's reasoning that would warrant addition limitations regarding his neck during the relevant period. Indeed, the ALJ discussed the same information presented by Mr. M in his brief, even though much of it occurred after the relevant period. Accordingly, without any additional argument from Mr. M, the Court cannot find that the ALJ inadequately discussed Mr. M's neck limitations. *Lopez*, 336 F.3d at 539.

The worsening of Mr. M's neck issues may provide Mr. M a reason to submit a new application for benefits; however, this Court may only review evidence relevant to the timeframe of the ALJ's decision. *Getsch v. Astrue*, 539 F.3d 473, 484 (7th Cir. 2008).

### 2. Mr. M's Maximum Lift/Carry Limitations

Under the Court's liberal construction of his complaint, Mr. M also argues that the ALJ's opinion regarding his maximum lift/carry limitation did not consider all his

medical records and therefore, is not supported by substantial evidence. The ALJ discussed Mr. M's lift/carry limitations as part of the ALJ's determination of Mr. M's RFC at Step Three.

Specifically, the ALJ considered Mr. M's testimony from his two most recent administrative hearings regarding this limitation. At the 2017 hearing, Mr. M stated that he "could lift/carry up to 5 pounds since his neck surgery, which occurred after the date last insured expired, and he stated he could lift 10-15 pounds prior to his surgery." [DE 21 at 26]. Moreover, Mr. M's testimony at his most recent hearing was that he "believes he is disabled because he has 10-pound weight limitation due to his lower back pain." [DE 21 at 26]. At both hearings, the ALJ included a 10-pound maximum lift/carry limitation in Mr. M's RFC by limiting him to sedentary work. *See* 20 C.F.R. 404.1567(a) ("Sedentary work involves lifting no more than 10 pounds at a time . . . .). Although Mr. M states in his brief that he now cannot lift more than 7.5 pounds, this is not the limitation he articulated to the ALJ during his hearing, and he has not referred to any evidence in the record that would support such a limitation prior to his date last insured. Accordingly, as the ALJ specifically incorporated the limitations as stated by Mr. M at the time of his hearing, the Court cannot find that the ALJ's RFC determination for the relevant period was not based on substantial evidence.

While new limitations regarding the amount Mr. M can lift or carry may provide a reason to submit a new application for benefits, Mr. M's statements about his current lift/carry maximum are not the limitations Mr. M articulated during the timeframe relevant to the ALJ's decision. *Getsch,* 539 F.3d at 484.

14

**IV.     CONCLUSION**

For the reasons stated above, the Commissioner's decision is **AFFIRMED**. The Clerk is instructed to enter judgement in favor of the Commissioner.

**SO ORDERED** this 8th day of March 2022.

s/Michael G. Gotsch, Sr.
Michael G. Gotsch, Sr.
United States Magistrate Judge